UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LIDICE GARCIA ASTORGA,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-3075-MLP

ORDER

Petitioner Lidice Garcia Astorga is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. She filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting that her immigration detention has become unconstitutionally prolonged under the Fifth Amendment. (Dkt. # 1.) Petitioner filed a declaration in support. (Dkt. # 1-2 ("First Astorga Decl.").) She seeks immediate release from detention, or alternatively, release upon payment of a bond not to exceed the amount set by the Immigration Judge ("IJ"). (Dkt. # 1, ¶ 5.) Respondents filed a return (dkt. # 9), supported by declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Nhat Truong (dkt. # 11) ("Truong Decl."), Clinic Director at the NWIPC Eddie Wang, M.D. (dkt. # 12) ("Wang Decl."), and their counsel Jennifer Wong (dkt.

# 10) ("Wong Decl."). Petitioner filed a traverse in reply (dkt. # 13) supported by a second declaration from Petitioner (dkt. # 15) ("Second Astorga Decl.") and a declaration from Petitioner's Florida attorney, Angelo Gomez (dkt. # 14) ("Gomez Decl."). The Court ordered supplemental briefing (dkt. # 16), which the parties timely filed (dkt. ## 17-19.) Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a citizen of Cuba who entered the United States near Calexico, California, on September 18, 2022. (First Astorga Decl., ¶¶ 1-2; Truong Decl., ¶ 4.) She was encountered by border patrol that same day, detained for a few hours, and then paroled into the United States due to "custody constraints" at the El Centro Sector Centralized Processing Center. (First Astorga Decl., ¶ 2; Truong Decl., ¶ 5.) Petitioner's parole was set to expire on November 18, 2022. (Truong Decl., ¶ 6.)

It is unclear whether Respondents took any action pursuant to Petitioner's parole expiring in November 2022. There is no evidence Respondents sought Petitioner's return to custody or placed her into removal proceedings. However, it appears undisputed that Petitioner remained released in the United States up until the point of her September 11, 2025 redetention, which is discussed in further detail below.

In 2023, Petitioner was arrested on two separate occasions: in Florida for possession of cocaine, marijuana, and drug paraphernalia, and in North Carolina for Assault with a Deadly Weapon. (Truong Decl., ¶¶ 7-8.) Respondents' return refers to these arrests as criminal convictions (dkt. # 9 at 3) but Petitioner asserts that the Florida arrest never led to charges being

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

filed, and the North Carolina charge was dismissed during this case's pendency. (First Astorga Decl., ¶ 12; *see* dkt. # 18, ¶ 3, Ex. A.)

On April 10, 2025, Petitioner filed an I-485, Application to Adjust Status, under the Cuban Adjustment Act. (Dkt. # 1, ¶ 22; First Astorga Decl., ¶ 3.)

On September 11, 2025, Petitioner was detained by ICE during a traffic stop, during which Officer Truong alleges Petitioner told border patrol agents that she was illegally present in the United States. (First Astorga Decl., ¶ 4; Truong Decl., ¶ 9.) Subsequently, Petitioner was transferred from the Miramar Field Office to Broward Transitional Center, the Orange County Jail, and then to Baker County Detention Center, where she remained for five months. (First Astorga Decl., ¶¶ 6-7; Truong Decl., ¶¶ 10-12.) During this period, Petitioner experienced medical issues requiring hospitalization and conditions she describes as "extremely poor."[2] (First Astorga Decl., ¶¶ 4-7.)

On October 2, 2025, ICE, through its Office of Enforcement and Removal Operations ("ERO"), issued Petitioner a Notice to Appear ("NTA"), placing her in removal proceedings in Macclenny, Florida. (First Astorga Decl., ¶¶ 7-8; Truong Decl., ¶ 13; *see* Wong Decl., Ex. 3 at 2.) Between October 15, 2025, and January 12, 2026, Petitioner appeared in immigration court and was granted continuances of her hearings. (Truong Decl., ¶¶ 14-19.) Her case was scheduled for a final hearing on February 10, 2026. (*Id.* ¶ 19.)

On February 3, 2026, prior to the scheduled final hearing, Petitioner was transferred to the NWIPC and her case was transferred to the immigration court in Tacoma. (Truong Decl., ¶¶ 20-21.)

---

[2] The parties devote significant attention disputing Petitioner's medical care. It is ultimately unnecessary to resolve any factual disputes regarding Petitioner's purported lack of care or detention conditions prior to adjudicating this petition.

On August 4, 2026, Petitioner's attorney requested a bond hearing, which was held on August 7, 2026. (First Astorga Decl., ¶ 14; Truong Decl., ¶¶ 31, 33.) At the hearing, the IJ denied Petitioner's bond for lack of jurisdiction and issued his order using a checkbox form. (*See* dkt. # 1-3 at 1.) He also entered an alternative finding that "if the [c]ourt had jurisdiction, it would grant bond in the amount of $16,000." (*Id*. at 2.) The "Flight Risk" box is also checked, but there is no analysis or additional reasoning on the IJ's order to support the flight risk finding. (*Id.*)

Petitioner was scheduled to attend a final immigration merits hearing on September 16, 2026 during this case's pendency.[3] (First Astorga Decl., ¶ 15; dkt # 9 at 4.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Much of the parties' original briefing is spent disputing Petitioner's right to relief under the Fifth Amendment, as it relates to her alleged prolonged detention. (*See* dkt. # 1, ¶¶ 37-84; dkt. # 9 at 5-17; dkt. # 13 at 4-12.) On September 14, 2026, the Court ordered the parties to file supplemental briefing to address Petitioner's case through the lens of two recent orders out of this District with facially analogous facts: *Popova v. Blanche*, 2026 WL 1242984, at *3 (W.D. Wash. May 6, 2026), and *Asad v. Noem*, 2026 WL 775628, at *2 (W.D. Wash. Mar 19, 2026).

[3] The parties did not provide an update to the Court after the merits hearing..

(Dkt. # 16 at 1.) The Court ordered the parties to address the "issue of Respondents' redetention of Petitioner, including but not limited to the statutory authority and procedural requirements for such redetention." (*Id.* at 1-2.)

**A. Statutory Detention Authority**

Respondents contend that Petitioner is subject to mandatory detention, but their position is vague and inconsistent. The thrust of Respondents' primary argument is that because Petitioner was paroled into the United States, upon its expiration, Petitioner's "status reverted to that of an arriving [noncitizen] subject to mandatory detention under 8 U.S.C. § 1225(b)(1) for expedited removal." (Dkt. # 19 at 3.) Perhaps recognizing that nothing within the current evidentiary record supports finding Petitioner was ever subject to an expedited removal process under § 1225(b)(1), Respondents then assert Petitioner is instead subject to "§ 1225(b)(2)(A) as an applicant for admission." (*Id.*)

Section 1225(b)(2)(A) reads:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Here, however, Respondents do not identify any evidence that demonstrates any DHS official determined petitioner was an "applicant for admission" and was not "clearly and beyond a doubt entitled to be admitted" and thus subject to mandatory detention under § 1225(b)(2). *See Singh v. Noem*, 2026 WL 1045507, at *4 (W.D. Wash. April 17, 2026).

Respondents' position is also belied by the record, which indicates the government has treated Petitioner as subject to discretionary detention under § 1226(a) since her redetention. Petitioner's operative NTA shows that she was not treated as seeking admission under § 1225, as the issuing officer declined to designate Petitioner as an "arriving [noncitizen]." (Wong Decl.,

Ex. 3 at 2.) Instead, she was designated as a "[noncitizen] present in the United States who has not been admitted or paroled." (*See id.*) This is notable because "arriving [noncitizen]" is the operative language used to define the scope of § 1225(b)(2)(a) in the implementing regulation. *See* 8 C.F.R. § 235.3(c)(1); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (concluding "arriving [noncitizen]" language is synonymous with § 1225). Moreover, the warrant states that Petitioner is being taken into custody as authorized by "section 236 of the [INA,]" codified at 8 U.S.C. § 1226. (Wong Decl., Ex. 4.)

Ultimately, the Court need not fully resolve the statutory authority governing Petitioner's detention because, separate from that statutory authority, the government "remain[ed] obligated to effectuate [Petitioner's] detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

**B. *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

Petitioner contends all three factors weigh in her favor. (Dkt. # 17 at 2-5.) Respondents do not meaningfully address Petitioner's redetention or discuss the *Mathews* factors. (*See generally* dkt. ## 9, 19.)

*1. Private Interest*

Freedom from physical confinement is a substantial liberty interest. See *Zadvydas*, 533 U.S. at 690; *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Even those initially released from detention on parole take with them "a liberty interest" and are entitled to "full protections of the due process clause." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. During the four years Petitioner was at liberty, she filed for asylum and for status adjustment under the Cuban Adjustment Act. (Dkt. # 1, ¶ 35.) She has developed significant ties to the United States, with two minor children and close family residing in Florida, with whom she lived until she was detained one year ago. (First Astorga Decl., ¶ 33; dkt. # 17 at 3; Wong Decl., Ex. 1 at 2, 5.) Respondents did not address whether or how this liberty interest might be diminished. Accordingly, her significant liberty interest weighs in her favor.

*2. Risk of Erroneous Deprivation*

The vague circumstances surrounding Petitioner's arrest and redetention demonstrate there was a high risk her liberty would be erroneously deprived and that there was value in additional procedural safeguards.

Respondents appear to justify Petitioner's redetention on the basis of her parole expiring. According to Respondents, because Petitioner's parole expired on November 18, 2022, "her status reverted to that of an arriving [noncitizen] subject to mandatory detention under 8 U.S.C. § 1225(b)(1) for expedited removal." (Dkt. # 9 at 5.) As noted above, however, whether a particular statute authorizes the detention of a noncitizen is a separate question from whether the

noncitizen's redetention complied with due process. *See supra*, Part A. Regardless, there is no evidence in the record that Petitioner was ever placed in expedited removal, such as a Notice and Order of Expedited Removal.

Turning toward to DHS's administrative records, the Form I-213, which documents Petitioner's arrest and redetention, makes no mention of Petitioner's parole serving as the basis for redetention. (Wong Decl., ¶ 2, Ex. 1.) Instead, it appears ICE arrested Petitioner only after they responded to the Florida Department of Safety's request for assistance, interviewed Petitioner, and determined she was "illegally present in the United States." (*Id.*) Although Respondents offer a post-hoc explanation of Petitioner's redetention on the basis of her parole expiring, nothing in the record supports finding that actually motivated ICE's decision to redetain.

It is undisputed that Petitioner remained out of custody for years following her purported parole expiration. There is no evidence Respondents took steps to return Petitioner to custody or otherwise sought to advance removal proceedings. And there is no evidence of changed circumstances that would suggest Petitioner became a flight risk or danger to the community while released. *See* 8 C.F.R. § 212.5(b) (authorizing humanitarian parole only if the noncitizen "present[s] neither a security risk nor a risk of absconding"). Given the nearly three years that Petitioner remained released and living in the United States past her parole, providing pre-deprivation safeguards would have afforded Petitioner an opportunity to learn of, and/or challenge, the bases or necessity of her redetention. This factor weighs in Petitioner's favor.

*3. Governmental Interest*

The government has a legitimate and substantial interest in enforcing immigration laws, ensuring attendance at proceedings, protecting public safety, and efficiently managing parole

programs. Respondents, however, identify no concrete way in which providing basic pre-deprivation notice or a prompt post-deprivation hearing would have undermined those interests. Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Alfonso v. Bondi*, 2026 WL 395326, at *6-7 (W.D. Wash. Feb. 12, 2026).

On this record, Respondents have not shown exigent circumstances—such as an immediate, specific danger to the community or imminent flight—that would make even a prompt post-deprivation hearing impracticable. The third *Mathews* factor therefore also favors Petitioners as a general matter.

Balancing the *Mathews* factors, the Court concludes that Respondents' redetention of Petitioner without first providing pre-deprivation process deprived her of a liberty interest in remaining free, that there was a risk of erroneous deprivation, and there was value in additional procedural safeguards. Further, Respondents have not articulated an interest that would have made such additional process impracticable. Her redetention, therefore, was unlawful under the Due Process Clause of the Fifth Amendment and habeas relief is warranted.

Courts in this District generally find that release is the appropriate remedy for a constitutionally deficient redetention because any post-deprivation hearings "occur after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. -T.B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate

release [wa]s necessary to restore the status quo <u>ante litem</u>") (underlining in original). The Court similarly finds that restoring Petitioner to the status she held prior to her erroneous deprivation (*i.e.*, released in the United States and subject to reasonable conditions) is the appropriate remedy.

In finding that Respondents redetained Petitioner without adequate process under *Mathews*, the Court does not reach Petitioner's prolonged detention claim. That claim is therefore DENIED as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall release Petitioner within **forty-eight (48) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3) Respondents shall file a certification, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 24th day of September, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge